NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

AMANDA SUE FLYNN, *Petitioner/Appellant,*

*v.*

GREGORY SCOTT BROWN, *Respondent/Appellee.*

No. 1 CA-CV 14-0701 FC
FILED 10-29-2015

Appeal from the Superior Court in Maricopa County
No.  FC2010-092975
The Honorable John R. Hannah, Jr., Judge
The Honorable Peter A. Thompson, Judge

**AFFIRMED**

COUNSEL

Benes Law & Mediation, Chandler
By Julie A. Benes
*Counsel for Petitioner/Appellant*

The Wilkins Law Firm PLLC, Phoenix
By Amy M. Wilkins, Heather Coe-Smith
*Counsel for Respondent/Appellee*

---

## MEMORANDUM DECISION

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Kent E. Cattani joined.

---

**G E M M I L L**, Judge:

**¶1**        Amanda Sue Flynn ("Mother") appeals from the family court's ruling denying her request to discontinue Gregory Scott Brown ("Father")'s parenting time, awarding joint legal decision-making authority, and awarding Father attorney fees. On the record before us, we discern no abuse of discretion and, therefore, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        In a 2011 dissolution decree, the family court awarded Mother sole legal custody and final decision-making authority, and granted Father supervised parenting time.

**¶3**        In 2013, Mother filed a petition to modify parenting time, claiming Father sexually molested their minor daughter. On an emergency basis, the family court temporarily awarded Mother sole legal decision-making authority and suspended Father's parenting time pending a hearing. After a hearing, the family court reaffirmed its emergency temporary orders, discontinued the child's counseling, and scheduled trial.

**¶4**        In the joint pretrial statement filed one week before trial, Father requested joint legal decision-making authority, to which Mother objected, citing procedural irregularities. After a three-day trial, the family court issued a sixteen-page ruling, finding "a preponderance of the evidence supports the conclusion that Father did *not* commit sexual abuse against his daughter." The family court concluded that the "most likely explanation is that Mother saw what looked *to her* like a 'hickey' on her daughter's neck, asked the child what happened and was told that Father 'kissed my neck," and jumped to a conclusion. "From there Mother interpreted everything the child said . . . as sexual behavior." The family court found that Mother's response shaped the child's statements "and then, over time, the child's interpretation of events and her emotional responses to them." The family court found Mother's explanations for various disparaging remarks she made about Father or for her actions to

2

keep Father away from the child to be "patently false." The family court also found that Mother had a "lack of objectivity and perspective."

¶5        The family court denied Mother's request for an order discontinuing Father's parenting time and then found a substantial change of circumstances that justified changing Mother's sole legal decision-making to joint legal decision-making. The family court also found that "Mother's misguided effort to 'protect' the child from Father has placed the father/daughter relationship at serious risk" and that "Father has established a stable, alcohol-free lifestyle." The family court concluded that "Mother's insistence on sole legal decision-making power and supervised visitation stems from an unhealthy mistrust that is not in the child's best interest." The family court further noted that Mother "overstated the evidence supporting her position. At times been outright untruthful. She seems to have convinced herself that Father is actually a threat to the child, which may have led her to adopt an 'end justifies the means' approach to the litigation."

¶6        In addition to granting joint legal-decision making authority, the court modified parenting time, ordered the parties to employ a reunification counselor, and awarded Father attorney fees. Mother timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(2).

## DISCUSSION

### I.   Legal Decision-Making Authority

¶7        Mother argues the family court erred in modifying legal decision-making authority in the absence of a petition and without notice, citing Arizona Rule of Family Law Procedure ("Rule") 91(D). Rule 91(D) is a prehearing procedural rule requiring compliance with A.R.S. § 25-411 to modify child custody. That statute sets forth prehearing procedural requirements a party must follow when seeking modification of legal decision-making authority. A.R.S. § 25-411(L); *In re Marriage of Dorman*, 198 Ariz. 298, 302, ¶ 10 (App. 2000). Rule 91(D) and § 25-411(L) both direct a party seeking modification of child support or legal decision-making authority to submit an affidavit or petition and give notice so that the court may determine whether to hold a hearing.

¶8        Here, the family court had *already* scheduled a trial on Mother's petition to modify parenting time when Father requested joint legal decision-making authority in the joint pretrial statement. Although he failed to make his request in a formal petition, the joint "pretrial

statement controls the subsequent course of the litigation" and has "the effect of amending the pleading." *Carlton v. Emhardt*, 138 Ariz. 353, 355 (App. 1983); *see also* Ariz. R. Fam. Law P. 34(b) (family court may allow the pleadings to be amended when merits of the action will be served and no prejudice results). The parties submitted the joint pretrial statement one week before the first day of trial and more than five weeks before the final day of trial. Mother's objection in the joint pretrial statement to Father's request to modify legal decision-making authority is evidence she had prior notice.[1] There was no procedural error in the family court's modification.

**¶9** Moreover, a party must challenge a failure to comply with § 25-411's procedural requirements via special action "prior to a resolution on the merits." *Dorman*, 198 Ariz. at 302, ¶ 11. When, as here, the family court "conducted an evidentiary hearing, reviewed the merits of the case, and determined there was sufficient cause to modify" legal decision-making authority, "[i]t is too late to obtain effective appellate review of alleged noncompliance with the prehearing procedural requirements of § 25-411." *Id.* at 303, ¶ 11. Thus, Mother's argument that the family court erred in modifying legal decision-making authority in the absence of a formal petition is moot.

## II. Evidentiary Issues, Factual Findings, and Rulings

**¶10** Mother also challenges the family court's finding of changed circumstances, the court's ruling permitting Father to offer an alternative explanation for the source of the mark on the child's neck, the court's finding that Father's alternative explanation is "more consistent with the evidence" than is sexual molestation, its reliance on testimony from a prior hearing, and the award of attorney fees.[2]

---

[1] Mother claims that had Father "retained a custody evaluator, Mother would have been on notice of Father's intent" to modify "custody/legal decision making." However, hiring a custody evaluator is not a condition precedent to modifying legal decision-making authority. *See* A.R.S. §§ 25-403(A), 25-403.01.

[2] Mother also challenges the court's November 21, 2013 ruling discontinuing counseling for the minor child. Mother does not develop this argument, however, nor has she shown that she was prejudiced by that ruling. Accordingly, we decline to address it. *See Polanco v. Indus. Comm'n of Ariz.*, 214 Ariz. 489, 491 n.2, ¶ 6 (App. 2007) (declining to address an

**¶11**　　　　We review evidentiary rulings for abuse of discretion. *Larsen v. Decker*, 196 Ariz. 239, 241, ¶ 6 (App. 2000). We will not set aside factual findings unless they are clearly erroneous. *In re Marriage of Berger*, 140 Ariz. 156, 161 (App. 1983). We review an award of attorney fees under A.R.S. § 25-324 for abuse of discretion. *Rinegar v. Rinegar*, 231 Ariz. 85, 90, ¶ 22 (App. 2012).

**¶12**　　　　We are unable to determine whether the court abused its discretion in making findings regarding changed circumstances, Father's alternative explanation, and award of attorney fees because Mother did not provide transcripts of the trial proceedings. As the appellant, Mother "is responsible for making certain the record on appeal contains all transcripts or other documents necessary for us to consider the issues raised on appeal." *Baker v. Baker*, 183 Ariz. 70, 73 (App. 1995); *see also* ARCAP 11(c)(1)(B) (appellant must include transcripts on appeal if contending that a judgment, finding, or conclusion is unsupported by or contrary to the evidence). In the absence of a transcript, we must assume the evidence at trial supports the court's findings. *Baker*, 183 Ariz. at 73.

**¶13**　　　　In any event, based on the limited record before us, Mother's arguments fail. Mother's contention that the family court did not find changed circumstances is contradicted by the plain language of the family court's ruling, which unequivocally found a "substantial change of circumstances." The family court also did not err in permitting Father to testify about an alternative explanation for the child's injury. *S. Ariz. Freight Lines v. Jackson*, 48 Ariz. 509, 517–18, (1936) (stating it was not error for a defendant "to offer a possible explanation of the cause of the physical condition of the plaintiff when that cause is one of the material issues of the case"). Because we do not reweigh evidence on appeal, we discern no error in the family court's finding that Father's alternative explanation "is more consistent with the evidence." *See Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

**¶14**　　　　As to Mother's challenge to the attorney fees award, although the family court may award attorney fees pursuant to A.R.S. § 25-324 based on either a disparity in the parties' financial resources or the reasonableness of the positions, *Magee v. Magee*, 206 Ariz. 589, 591 n.1, ¶ 8 (App. 2004), the family court here did not specify the basis for its award. Mother argues that since the parties' financial resources were substantially equivalent, the family court must have made its ruling based on the reasonableness of the

argument a party mentioned only in passing and for which no supporting legal authority was cited).

parties during litigation and that, because Mother was reasonable and Father was not, the family court erred in awarding Father attorney fees. Although not specifically stated in the attorney fees section of its ruling, the family court clearly viewed Mother's positions as unreasonable, given its view that Mother "overstated the evidence supporting her position," was "outright untruthful," gave "patently false" explanations, and "adopt[ed] an 'ends justifies the means' approach to the litigation." An unreasonable position can include making misrepresentations and false allegations without good cause. *Mangan v. Mangan*, 227 Ariz. 346, 351–52, ¶ 25 (App. 2011). Because the abuse of discretion standard acknowledges the family court's opportunity to observe whether the parties' positions were reasonable, we discern no error. *See Graville v. Dodge*, 195 Ariz. 119, 131, ¶ 56 (App. 1999).

**¶15** Mother's isolated challenges to various findings she alleges are contrary to the evidence also do not warrant relief. Mother contends the family court misread the forensic interviewer's report or misheard the forensic interview. Yet, Mother fails to explain how the asserted error ultimately affected the family court's ruling.

**¶16** Mother also argues the family court improperly found that Mother shaped the minor child's descriptive terms and improperly disregarded the minor child's reports of inappropriate touching. Although we do not have the trial transcripts, it appears from the record before us that the forensic interviewer and/or an expert witness testified about these issues at trial. The family court, as fact finder, determines what weight to give expert testimony. *Sholty v. Sherill*, 129 Ariz. 458, 461 (App. 1981). Again, we do not reweigh conflicting evidence on appeal but rather defer to the "trial court's opportunity to judge the credibility of the witnesses." *Hurd*, 223 Ariz. at 52, ¶ 16.

**¶17** Finally, Mother challenges the family court's reliance on testimony given by the daughter's step-mother at the temporary orders hearing. Father listed the step-mother as a witness for trial without objection from Mother, but the step-mother did not testify at trial. Mother listed as a trial exhibit the recording of the prior hearing at which the step-mother testified. After hearing all the evidence at trial, the family court took the matter under advisement and had access to the step-mother's prior recorded testimony. Although the family court's ruling does cite step-

mother's prior testimony, Mother does not explain how that reliance prejudiced her.[3]  We find no prejudice and discern no error.

## CONCLUSION

**¶18**        Finding no abuse of discretion or clear error, we affirm. Because Father prevailed, we award him his taxable costs of appeal upon his compliance with Arizona Rule of Civil Appellate Procedure (ARCAP) 21.  Father also requested attorney fees on appeal under A.R.S. § 25-324. Upon consideration of the record before us regarding the parties' financial resources and the reasonableness of their positions, we also award Father an amount of reasonable attorney fees to be determined after Father's compliance with ARCAP 21.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

[3] Mother points out the family court incorrectly stated that "Mother's attorney had an opportunity to cross-examine the witness" at the prior hearing; in fact, Mother was unrepresented at the time.  Nevertheless, she cross-examined the step-mother herself, and was therefore not denied the right to confront a witness.