NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

TANNER JAY SCHRITTER, *Petitioner/Appellee*,

*v.*

LORINDA LYNN SCHRITTER, *Respondent/Appellant*.

No. 1 CA-CV 23-0550 FC

FILED 10-01-2024

Appeal from the Superior Court in Mohave County
No. S8015DO201700175
The Honorable Megan A. McCoy, Judge

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**

COUNSEL

Berkshire Law Office PLLC, Tempe
By Keith Berkshire, Alexandra Sandlin (argued)
*Counsel for Petitioner/Appellee*

Silk Law Office, Lake Havasu City
By Melinda Silk
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Jennifer B. Campbell and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

¶1 Lorinda Lynn Schritter ("Mother") appeals from the post-decree orders modifying parenting time and child support, denying her petition to modify legal decision-making authority, and awarding attorney's fees to Tanner Jay Schritter ("Father"). We affirm the orders on parenting time and legal decision-making, but we vacate the child-support order and remand for reconsideration using a correct parenting time adjustment. Because we vacate the child-support order, we also vacate the attorney's fees award without prejudice.

## FACTS AND PROCEDURAL BACKGROUND

¶2 The parties divorced in 2018 and have one child, who was born in 2015. Father lives in Kingman, and Mother lives in Gilbert. As ordered in the dissolution decree ("2018 Dissolution Decree"), they shared equal parenting time and joint legal decision-making authority, with Father having the final say when they could not agree.

¶3 In 2019, both parties petitioned to modify, asking for sole legal decision-making authority. In May 2020, the court awarded Father sole legal decision-making authority and primary physical custody ("2020 Modification Order"). Because the child would start attending school, the court awarded Mother parenting time every other weekend, every Thanksgiving, on alternating Christmas holidays, and all school breaks longer than five days. For winter breaks, in odd years, Father had the child from the last day of school until December 27. During the summer, the child lived mainly with Mother, with Father having parenting time every other weekend. Father's parenting time included one seven-day vacation every summer. Mother unsuccessfully appealed the order. *See Schritter v. Schritter*, 1 CA-CV 20-0399 FC, 2021 WL 3089042, at *1, 5–7, ¶ 1 (App. July 22, 2021) (mem. decision).

¶4 The current appeal follows Father's November 14, 2022, petition to modify parenting time in which he asked for a more equal

allocation of school breaks. He alleged that spending some holidays with his family was in the child's best interests. Mother moved to dismiss the petition, arguing that no substantial and continuing change affected the child's welfare. The superior court denied the motion to dismiss.

¶5 In February 2023, Mother responded and counter-petitioned for joint legal decision-making authority. She again argued that Father had not shown a change in circumstances warranting a change in parenting time. Mother argued that the court should order joint legal decision-making and award her attorney's fees because Father abused his sole legal decision-making authority. Alternatively, she requested primary physical custody and child support.

¶6 As support for his modification request, Father responded that he and his wife now have a two-year-old son with whom the child cannot share most holidays, which constitutes a changed circumstance. Father separately petitioned to modify child support because Mother was no longer unemployed, and thus her income increased from the 2020 Modification Order.

¶7 After an evidentiary hearing in April 2023, the court denied Mother's request for joint legal decision-making authority. It granted Father alternate Thanksgivings, a ten-day summer vacation instead of the previous seven-day vacation, and equally divided school breaks longer than five days. The court did not modify the Christmas break schedule. The court also issued orders governing communication and parenting time exchanges, and limiting what the parents could send to the child at the other parent's home. Mother's child support obligation increased from $148 to $493 monthly starting December 1, 2022.

¶8 The superior court denied Mother's motion to alter or amend the ruling. It awarded Father his attorney's fees and costs related to the motion to alter or amend, finding Mother merely "rehash[ed] the issues already addressed." Mother timely appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") §§ 12-2101(A)(2) and -120.21(A)(1).

## DISCUSSION

I. **Mother Cannot Appeal the Decision to Grant an Evidentiary Hearing on Father's Modification Petition.**

¶9 A petition to modify legal decision-making or parenting time requires a two-step analysis in the superior court. *Backstrand v. Backstrand*, 250 Ariz. 339, 343, ¶ 14 (App. 2020). A court must first determine whether

changed circumstances materially affecting the child's welfare exist. *Id.* If the court finds such a change, it must determine whether the modification is in the child's best interests. *Id.*

**¶10** At the first step, the modification petition must set "forth detailed facts supporting the requested modification." A.R.S. § 25-411(L). The superior court will deny the petition unless it finds adequate cause outlined in the pleadings. *Id.* Adequate cause for modification requires "more than mere conclusory allegations that a child's best interests would be served by a change of custody." *Pridgeon v. Superior Court*, 134 Ariz. 177, 182 (1982).

**¶11** Mother contends the court erred by granting a hearing because Father's petition failed to allege adequate cause. Mother's request for relief on appeal is untimely. *See In re Marriage of Dorman*, 198 Ariz. 298, 302-03, ¶ 11 (App. 2000). The modification procedure in A.R.S. § 25-411(L) serves as a screening function and is intended to "prevent repeated or insubstantial" modification petitions. *Id.* at 302, ¶ 11 (quoting Uniform Marriage and Divorce Act § 410, cmt. 9A U.L.A. 538 (1998)). Waiting until after the hearing and final modification decision to argue that the modification petition was inadequate means the parties have already gone through the time and expense of discovery and a hearing. At that point, "[i]t is too late to obtain effective appellate review of alleged noncompliance with the prehearing procedural requirements of § 25-411." *Id.* at 303, ¶ 11; *see also Sundstrom v. Flatt*, 244 Ariz. 136, 138, ¶ 8 (App. 2017).

**¶12** Moreover, because the hearing already occurred, we may have evidence that the modification was warranted even if the allegations in the initial petition were insufficient. Thus, the "appellant will have great difficulty showing prejudice from an error in the preliminary verification or screening procedures under § 25-411 after a hearing has occurred." *Dorman*, 198 Ariz. at 303, ¶ 12. The correct way to challenge the superior court's decision to allow a hearing on an allegedly deficient modification petition is by special action. *Id.*; *see also* Ariz. R.P. Spec. Act. 1(a) (A special action is warranted when there is no "equally plain, speedy, and adequate remedy by appeal."). For the same reason, we do not address Mother's argument that the court erred by denying her motion to dismiss before her reply was due.

**II.    The Superior Court Did Not Abuse Its Discretion by Amending Parenting Time and Affirming Sole Legal Decision-Making Authority.**

¶13        We review the modification decision for an abuse of discretion. *Backstrand*, 250 Ariz. at 343, ¶ 14. An abuse of discretion occurs "when the record is devoid of competent evidence to support the decision." *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018) (quotation omitted).

**A.    The Superior Court Had Sufficient Evidence About Changed Circumstances to Modify Parenting Time.**

¶14        Mother contends that Father did not show changed circumstances or that a modification of parenting time was in the child's best interests. A superior court may find a "material change of circumstances when the change has caused the original decree to serve its purpose no longer." *Backstrand*, 250 Ariz. at 344, ¶ 17. The superior court found that changed circumstances affecting the child's welfare existed because the child had started school since the last parenting time order, and the passage of time showed the existing schedule did not work or "fully consider the child's current living situation." Father and his wife also had a baby after the last order. The record supports these findings and justifies a changed circumstances determination.

¶15        The effect of the holiday schedule at the time of the 2020 Modification Order was unknown because the child had not yet started school. For example, before the child started school, Mother had four days for Thanksgiving, but because the Thanksgiving break during school was a full week, Mother had the child for ten days. The child told Father he wanted to travel with Father's extended family during the holidays. According to Father, the child could not celebrate Thanksgiving or other holidays with his new brother or extended family because of the limited holiday schedule.

¶16        While Mother may disagree about the weight the superior court should give the evidence, "[w]e will not substitute our judgment by reweighing the evidence underlying the court's best-interests analysis." *Backstrand*, 250 Ariz. at 346, ¶ 27; *see also Vincent v. Nelson*, 238 Ariz. 150, 155, ¶ 18 (App. 2015) (Appellate courts defer to the superior court's credibility determinations and resolution of conflicting evidence.). Thus, the record supports the superior court's finding of changed circumstances.

### B. The Superior Court Correctly Engaged in a Best Interests Analysis.

¶17　　　　The second step of the modification inquiry requires the superior court to determine whether a change is in the child's best interests. *Backstrand*, 250 Ariz. at 345, ¶ 25. To determine the child's best interests, a court considers the relevant factors from A.R.S. §§ 25-403 through -403.04.

¶18　　　　As for parenting time, the superior court found the child's ability to spend time with his half-sibling and Father's extended family was in the child's best interests, which the schedule in place at the time did not allow. The court also found the parties' "minimal cooperation" led to an inability to accommodate changes in parenting time.

¶19　　　　Mother argues a modification was not warranted because the evidence showed that the parties could cooperate. Mother presented evidence that Father took the child on some trips and summer vacations with extended family and that she agreed to some of Father's requests to trade parenting time. But apart from a trip to Hawaii, the trips occurred during Father's regularly scheduled parenting time and did not involve holidays. Mother also denied Father's request to take the child on a spring-break trip with his extended family in 2022.

¶20　　　　Mother's disagreement with the court's finding that the parties could not cooperate on parenting time does not establish an abuse of discretion. We defer to the superior court's credibility determinations and resolution of conflicting evidence. *Backstrand*, 250 Ariz. at 346, ¶ 27.

¶21　　　　Mother also challenges many of the superior court's findings about its decision to affirm Father's sole legal decision-making. Again, much of Mother's argument asks this court to view or weigh conflicting evidence differently. "Even though conflicting evidence may exist, we affirm the [superior] court's ruling if substantial evidence supports it." *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

¶22　　　　The superior court declined to modify Father's sole legal decision-making authority because the parties struggled to agree on decisions affecting the child. Mother denies this finding, arguing that she complied with Father's request to take the child to a specific doctor, but Father would not fill the prescription. Father's evidence showed that the doctor agreed the prescription was unnecessary after speaking to Father about the child's medical history. This event shows an inability to agree on medical issues that supports the court's ruling.

¶23        The superior court also concluded that the parties' disputes were disproportionate to the topic. For example, the court mentioned a dispute over a Halloween costume during Father's parenting time that involved Mother's inability to respect Father "during his parenting time," not Father's abuse of his sole authority. Given the disagreement over similar issues, the record supports the finding that the parties cannot cooperate to the degree needed for joint decision-making. *See* A.R.S. § 25-403.01(B)(3) (The level of decision-making is based on "past, present, and future abilities of parents to cooperate."). Similarly, the findings about which parent is more likely to allow frequent, meaningful, and continuing contact with the other parent are based on the court's weighing of the parties' testimony and resolution of conflicting evidence to which we defer. A.R.S. § 25-403(A)(6); *Backstrand*, 250 Ariz. at 346, ¶ 27.

¶24        We also reject Mother's argument that the superior court erroneously referred to the prior orders in its best interests findings. The court cited the orders to highlight the parents' continued inability to co-parent or cooperate, which was relevant in determining whether joint legal decision-making authority was in the child's best interests. *See* A.R.S. § 25-403.01(B)(2) (The level of legal decision-making is based on whether the reason for the parents' disagreement is unreasonable or unrelated to the child's best interests.); § 25-403.01(B)(3) ("past, present, and future abilities of parents to cooperate in decision-making"); § 25-403.01(B)(4) ("[w]hether [a] joint legal decision-making arrangement is logistically possible").

¶25        Mother erroneously asserts that the superior court did not consider the child's relationship with her two friends, whom she considers part of her extended family, or their testimony about the child's adjustment to home, school, and community. *See* A.R.S. § 25-403(A)(2) (relationship with "any other person who may significantly affect the child's best interest"); § 25-403(A)(3) ("adjustment to home, school, and community"). These witnesses merely testified about their observations and what the child told them, not about their relationships with the child. The court considered these witnesses and concluded they were not credible.

¶26        We also reject Mother's contention that the superior court diminished her role by stating the child was well-adjusted to his "visits" with Mother. Although "visitation" is no longer part of the statutory parenting-time language, we do not presume judicial bias or misapplication of the law because the court referred to Mother's parenting time as visitation. *See Hart v. Hart*, 220 Ariz. 183, 188, ¶ 18 (App. 2009) (We presume the superior court knows and applies the correct legal standard.); *State v.*

*Ramsey*, 211 Ariz. 529, 541, ¶ 38 (App. 2005) (Judges are "presumed to be free of bias and prejudice.").

**¶27**     Next, Mother argues that the superior court erroneously found that the lack of domestic violence favored Father when considering which parent is more likely to allow frequent, meaningful, and continuing contact with the other parent. *See* A.R.S. § 25-403(A)(6). We presume the court referred to the lack of domestic violence here because A.R.S. § 25-403(A)(6) does not apply if a parent refuses contact to protect the child from domestic violence. The order suggests that the court concluded the A.R.S. § 25-403(A)(6) factor favored Father as the remaining findings established that Father was more likely to allow contact with Mother. Again, Mother disputes the court's view of the evidence, but we will not reweigh the evidence on appeal. *Backstrand*, 250 Ariz. at 346, ¶ 27. Because the court found that no domestic violence occurred, it properly stated that the domestic violence factor did not apply.

**¶28**     Lastly, Mother argues that the superior court violated A.R.S. § 25-411(J) by restricting her parenting time without a finding of serious endangerment. But reducing parenting time does not constitute a restriction under A.R.S. § 25-411(J). *Gonzalez-Gunter v. Gunter*, 249 Ariz. 489, 492, ¶ 13 (App. 2020). Thus, the statute does not apply.

### III.    The Superior Court Did Not Violate Mother's Due Process Rights.

**¶29**     The superior court ordered (1) the parties not to communicate with each other during parenting time exchanges, (2) the party dropping off the child must remain in the car, and (3) "[n]either parent may send anything with the child or to the other parent's home without permission." According to Mother, these orders violate due process and are not in the child's best interests.

**¶30**     We review allegations of due process violations *de novo. Jeff D. v. Dep't of Child Safety*, 239 Ariz. 205, 207, ¶ 6 (App. 2016). The superior court has the authority to include procedures for parenting time exchanges, parental communications, and to establish other procedures to protect the child's emotional and physical health under A.R.S. § 25-403.02(C)(4), (C)(7), and (D). These orders fall within that authority, and the record supports them.

**¶31**     Father provided evidence that Mother engaged in "long goodbyes," entered his car, and discussed parenting issues at the exchanges, which upset the child. Father also testified that Mother often sent cards and gifts to the child, which caused conflict between the child

and the other children in Father's home. He asked that Mother only send gifts on special occasions, but she refused. Although Mother disputed Father's report and noted that Father once sent a gift to the child, we do not reweigh the evidence. *Backstrand*, 250 Ariz. at 346, ¶ 27. The evidence supports the superior court's orders for parenting time procedures as they are in the child's best interests. Thus, Mother's due process rights were not violated.

## IV. The Superior Court Correctly Modified Child Support but Erroneously Applied the Parenting Time Adjustment.

**¶32** The superior court modified the child-support order from $148 monthly to $493, starting December 1, 2022. This increase reflected Mother's increased income, Father's new child, increased health insurance costs, and a reduction in Mother's parenting time. Mother argues the court erred by starting the support order before Father filed the petition to modify child support (February 6, 2023) and that the retroactive child-support order applied an incorrect parenting time adjustment before May 1, 2023. She also argues the court lacked sufficient evidence of Father's income.

**¶33** We review child support awards for an abuse of discretion. *Birnstihl v. Birnstihl*, 243 Ariz. 588, 590, ¶ 8 (App. 2018). "A court abuses its discretion when the record lacks competent evidence to support its findings." *Brucklier v. Brucklier*, 253 Ariz. 579, 582, ¶ 10 (App. 2022). "We 'accept the [superior] court's findings of fact unless they are clearly erroneous,' but 'draw our own legal conclusions from facts found or implied in the judgment.'" *McNutt v. McNutt*, 203 Ariz. 28, 30, ¶ 6 (App. 2002) (citation omitted).

**¶34** A modification order is "effective on the first day of the month following notice of the petition for modification," absent good cause for a different date, but no earlier than the date the petition was filed. A.R.S. § 25-327(A). The court did not err by basing the start date on Father's petition to modify parenting time instead of the later petition to modify child support because a court must determine the amount of child support whenever it enters a parenting time order. A.R.S. § 25-403.09(A); *see also Heidbreder v. Heidbreder*, 230 Ariz. 377, 379, ¶ 7 (App. 2012) (The obligation to modify child support arises upon granting a petition to modify parenting time under A.R.S. § 25-403.09(A).). Because Father's November 14, 2022, petition necessarily raised the issue of child support, the court did not abuse its discretion by ordering a modification effective December 1, 2022.

¶35 Even so, the superior court erred by using Mother's reduced parenting time to calculate the modified support order when the matter was being litigated. The applicable 100-day parenting time adjustment did not take effect until the court entered the modified order in April 2023. Before that date, Mother exercised 130 days of parenting time. The court should have applied that amount of time to the child support calculation from December 1, 2022, until the modification was effective in April 2023. *See* A.R.S. § 25-320 app. ("Guidelines") § V(C) (A court calculates parenting time costs by looking at the total yearly parenting time awarded to each parent.). The court should have then entered a separate child-support order reflecting the parenting time adjustment effective May 1, 2023. *See Amadore v. Lifgren*, 245 Ariz. 509, 516, ¶ 19 (App. 2018) (A modification cannot take effect before "the circumstances in a particular case became substantial and continuing."). Thus, the court erred by retroactively applying the 100-day parenting time adjustment.

¶36 Next, Mother argues that the court erred by modifying child support because Father violated Arizona Rule of Family Law Procedure 49(e)(2), which requires disclosure of tax returns for the past three years and current income records. Father did not provide these documents. But rather than moving to compel the information or requesting a continuance so she could obtain them, Mother asked the court not to modify the child-support order at the evidentiary hearing. *See* Ariz. R. Fam. Law P. 49(b)(3) ("A party prejudiced by a failure to disclose . . . may seek the remedies identified in Rule 65.").

¶37 Mother does not dispute that she now earns twice the amount reflected in the 2020 Modification Order or that Father has another child. These are changed circumstances supporting the modification. *See* A.R.S. § 25-327(A). Mother asked the court to deny the modification. The court cannot dismiss an action based on a party's disclosure violation if dismissal would go against the child's best interests. *See* Ariz. R. Fam. Law P. 65(b)(1)(E).

¶38 Finally, Mother argues that the superior court relied on incomplete financial information. The child-support order reflects Father's financial affidavit. The superior court considered Father's explanation that his 2022 financial records were unavailable. Father also denied having any business tax returns to disclose related to the K-1 forms. Although this did not explain his failure to disclose his 2019-2021 personal tax returns, Mother did not seek appropriate relief, and we defer to the court's evaluation of Father's testimony. *Backstrand*, 250 Ariz. at 346, ¶ 27.

¶39 Even if the K-1s showed partnership income, the court has the discretion to exclude non-continuing or non-recurring income when calculating child support. *See* Guidelines § II(A)(1)(d). We presume the court considered the K-1s as evidence and found it appropriate to exclude any related income. *See Ringegar v. Rinegar*, 231 Ariz. 85, 90, ¶ 20 (App. 2012) (Absent a request for written findings of fact and conclusions of law, "we presume that the superior court found every fact necessary to support its ruling.").

¶40 We vacate the child-support order and remand for recalculation to reflect the correct parenting time adjustment before the court modified the parenting time. On remand, when entering a child-support order with the correct parenting time adjustment, the superior court should require the parties to supplement the record with evidence of their income for the relevant period. Mother can request an order compelling Father's financial information to supplement the record on remand if he fails to disclose the information.

**V.** **While the Superior Court Acted Within Its Discretion to Award Attorney's Fees Related to Mother's Motion to Alter or Amend, We Vacate the Award Without Prejudice to Reconsider After Remand.**

¶41 The superior court awarded Father $1,536.70 in attorney's fees and costs related to Mother's motion to alter or amend, finding that the motion rehashed Mother's arguments at the trial. The court has the discretion to award attorney's fees, and we will affirm "if there is any reasonable basis for [the award]." *In re Marriage of Gibbs*, 227 Ariz. 403, 410, ¶ 20 (App. 2011) (quotations omitted).

¶42 The record shows that Mother's motion repeated her arguments from the hearing about child support and parenting time exchanges and asked the court to reweigh evidence supporting its best interests findings. Alternatively, Mother contends that summary dismissal was appropriate if her motion merely "rehashed" trial arguments, which would have prevented Father from incurring fees to respond. The court's discretionary decision to order a response before summarily denying the motion did not necessarily preclude an award of attorney's fees. *See* Ariz. R. Fam. Law P. 83(c)(2). We find no abuse of discretion. Because we are vacating the child-support order for the error identified above, we also vacate the attorney's fees award without prejudice to reconsideration on remand.

## ATTORNEY'S FEES AND COSTS ON APPEAL

**¶43** Both parties request attorney's fees and costs on appeal under A.R.S. § 25-324. After considering the reasonableness of their positions and financial resources, we order the parties to pay their own attorney's fees and costs.

## CONCLUSION

**¶44** We affirm the parenting time and legal decision-making orders. We vacate the child-support order and remand for recalculation consistent with this decision. We vacate the attorney's fees order without prejudice to reconsider on remand.



AMY M. WOOD • Clerk of the Court
FILED: AGFV